**UNITED STATES**

v.

**Master Sergeant David L.C. BELL, FR295–50–8684, United States Air Force.**

**ACM 28482 (recon).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 2 March 1990.

Decided 30 March 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major Ronald G. Morgan, and Major Mary C. Yastishock.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain Carlos L. McDade.

Before DIXON, HODGSON, O'HAIR, PRATT, LEONARD, RIVES, McLAUTHLIN, MILLS, JAMES and STUCKY, Appellate Military Judges, En Banc.

## OPINION OF THE COURT UPON RECONSIDERATION

JAMES, Judge:

This case is mainly about the troublesome consequences that can follow generosity in applying this Court's rules. Appellant was convicted on his pleas of guilty. When his case was briefed to us, the appellate defense counsel assigned no errors but invited our attention to the appropriateness of the sentence and to the "matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982)." As had become the prevailing practice by then, appellate defense counsel brought those latter "matters" to our attention by moving to file 29 pages of documents written by appellant. The original panel of this Court granted that motion and two later such motions to add three more pages.

The same panel examined the case and ordered a fact-finding hearing. *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). The *DuBay* hearing was held, and the record was returned for further review and later assigned to a different panel.[1]

While awaiting that review, appellant sent about 200 pages of "matters" to his appellate defense counsel, which his counsel dutifully moved to file "pursuant to *Grostefon*." Having granted some such motions, the new panel then reconsidered its prior grants and denied all the motions dated after 22 October 1990, the day on which the record was returned to the Office of The Judge Advocate General after the *DuBay* hearing. It then ordered appellate defense counsel to review the submissions and state appellant's issues in traditional form, with a sufficient summary of the facts on which he relies so that we could understand them in their context.[2] Appellant's major assignment of error was that the panel's method of dealing with the "*Grostefon* submissions" was itself error.

---

1. Intervening changes in the composition of the original panel added judges who were disqualified to consider this case. An unaffected quorum would not have remained on that panel.

2. Appellant sought review of our order by filing at the United States Court of Military Appeals a petition for extraordinary relief, but his petition was denied. *Bell v. United States*, 33 M.J. 197 (C.M.A.1991).

The panel decided the case on 14 February 1992, finding no error.[3]

Appellant moved timely for reconsideration en banc,[4] principally citing the need for uniformity in practice among the panels. This Court granted that motion[5] and now decides the case by a vote that is divided only upon the major issue, how to deal with "*Grostefon* submissions."

We first summarize the posture of appellant's case before we address the method we chose for dealing with his appellate complaints. Then we resolve those complaints.

## I. Facts

Appellant was, at the time of trial, a 37–year–old master sergeant with 18 years of service. He had suffered depression and went to the mental health clinic at Wilford Hall Medical Center, Lackland Air Force Base, Texas. His treatment included analysis of his urine, and it twice tested positive for the metabolite of cocaine. After that, his reports of symptoms and history changed markedly. Meanwhile, other, apparently independent investigations led to suspicion that he had committed other crimes. After about 27 days of treatment and observation, he was released from the hospital. Two days later he was confined to await trial. His defense counsel asked for a mental examination under R.C.M. 706, and that request was granted. Before the examination was finished, appellant burned himself severely by dousing himself with a flammable liquid and igniting it. He was hospitalized about a month for treatment of the burns and then returned to Wilford Hall so that the mental examination could be completed. It was, and the board concluded that he was malingering.[6]

Appellant negotiated a pretrial agreement, elected trial by the military judge alone, and pleaded guilty to all charges except a charge of malingering,[7] which was withdrawn. The military judge found him guilty in accordance with his pleas[8] and sentenced appellant to be discharged from the service with a bad-conduct discharge, to be confined for 5 years, to forfeit all pay and allowances, and to be reduced to E–1. That sentence was approved by the convening authority.

The record of trial included only 92 pages of transcript, a "routine" guilty-plea case, if such a thing exists. The original panel found it inadequate to resolve the complaints made in the first round of "*Grostefon* submissions" that appellant was drugged during both the mental examination and trial. Such a condition might have impaired the observations of the mental examination board and therefore its conclusions, and it might have made the pleas improvident. To resolve the issues presented by appellant's personal assertions of error under *Grostefon*, the original panel ordered a factfinding hearing. *See* R.C.M. 1102.

---

3. That decision was by 2–1 vote of the panel on the treatment of the *Grostefon* issue.

4. The government also moved for reconsideration by the panel. That motion was mooted when the Court granted appellant's motion for reconsideration en banc. The government's points are addressed elsewhere herein.

5. Accordingly, the panel's decision was withdrawn from publication.

6. "The essential feature of malingering is intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as ... evading criminal prosecution...." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 360 (3d ed., rev'd, 1987) ("DSM–III–R").

7. Article 115, UCMJ, 10 U.S.C. § 915 (1988); Manual For Courts–Martial, United States, 1984, Part IV, paragraph 40. The specification of this charge alleged malingering by self-inflicted injury, referring to appellant's self-inflicted burns and not to his feigned mental distress.

8. Appellant was convicted of violations of Articles 107, 112a, 121, and 123, UCMJ, 10 U.S.C. § 907, 912a, 921, and 923 (1988) as follows: two false statements about the residence of his wife, made in connection with certifications used to determine eligibility for allowances; two uses of cocaine; three thefts of property including government typewriters used at his workplace, an airman's bicycle, a microwave oven used in an airmen's dormitory, and a subordinate's "jambox"; and 11 forgeries by making and then uttering false documents, mostly in connection with application for advances of pay.

The post-trial hearing resulted in a 136–page transcript with the necessary exhibits and concludes with the military judge's findings of fact. To summarize them, the military judge found that: (1) appellant took medications during the observations of the mental examination, (2) but none of them affected the results of that examination, (3) appellant may have taken a placebo but no other mind-altering drugs that affected him at trial, and (4) that the providency of appellant's pleas were unaffected.

Thus, the "routine" guilty plea record was doubled by the cautious factfinding that the original panel found necessary to respond to appellant's personally claimed errors. During the next phase of this appeal, the original record was tripled by the addition of appellant's further personal submissions, moved, often opposed, sometimes granted, and finally reconsidered and denied as we described above. Appellant moved, through his military appellate defense counsel, to submit about 200 pages of documents on 27 occasions after the *DuBay* hearing. Appellee brought our attention to this situation by filing oppositions to most of those motions. All the motions after the *DuBay* were late, regardless whether one applies the 30–day period for an original assignment of errors or the 5–day period provided for further assignments after a remedial remand. Courts of Military Review Rules of Practice and Procedure, 22 M.J. CXXVII, CXXXII, rule 15(c); Internal Rules of the Air Force Court of Military Review, rule 7–4.c. Appellant's submissions were memoranda of his thoughts on his case and the law involved in it, intermingling issues, facts, and argument indiscriminately, and sometimes adding motions for relief. The response of his appellate defense counsel was to file with each a motion to submit the document, citing *Grostefon*.

Appellate defense counsel complied[9] with the second panel's orders by stating the issues raised by appellant in his personal submissions, yielding 31 issues separately stated as required. Courts of Military Review Rules of Practice and Procedure, 22 M.J. CXXVII, CXXXII, rule 15(a). Of them, the first two are assigned and briefed by counsel. As is customary, counsel noted, "Issues III through XXXI are presented at appellant's personal direction and are submitted to this Court pursuant to *United States v. Grostefon....*" Our treatment of appellant's personal submissions has effectively waived their untimeliness. With the history of this appeal in mind, we now address the management of personal assertions of error by the appellant.

## II. *Grostefon* Submissions

■ Appellant's first assignment of error suggests that the second panel's method of dealing with his voluminous "*Grostefon* submissions" is itself error. If he is correct, it would be senseless to proceed to his other claims now. First we review the requirement that we consider such issues, and we explore the cause of the quandary in this case. Last we review the measures taken by the panel in this case. We find no error.

### A. *Grostefon* and Our Prior Response

At the core of the controversy, but not at fault, is a decision of the United States Court of Military Appeals, *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). It required appellate defense counsel to bring to the attention of the reviewing court every issue urged by the client-appellant.[10] The unfortunate side effect of that rule has been that this Court's administration has permitted appellate defense counsel to satisfy the *Grostefon* obligation by routinely filing the appellant's letter or memorandum itself. To further complicate the situation, our generosity has so misled appellate defense counsel that they often omit even to ask to be excused from the briefing schedule to do so. *Cf. United States v. Ortiz*, 24 M.J. 323 (C.M.A.1987). Though

---

9. But see note 16, below.

10. *See also, United States v. Peel*, 29 M.J. 235 (C.M.A.1989); *United States v. Healy*, 26 M.J. 394 (C.M.A.1988); *United States v. Ortiz*, 24 M.J.

323 (C.M.A.1987); *United States v. Sumpter*, 22 M.J. 33 (C.M.A.1986); *United States v. Arroyo*, 17 M.J. 224 (C.M.A.1984).

we have few formal requirements,[11] we have generously excused appellants from compliance with them, too.[12]

Our approach to the offspring of *Grostefon* has not been well considered. We seem not to have noticed, for example, that *Grostefon* has been held not to excuse a party from the briefing schedules established by a court's rules. *United States v. Sumpter*, 22 M.J. 33 (C.M.A.1986); *United States v. Mitchell*, 20 M.J. 350, 351 (C.M.A. 1985). We have been perhaps too sympathetic with the professional position of appellate counsel, empathizing with their wish to disassociate themselves from frivolous or meritless issues. *Grostefon*, however, only requires counsel to assign errors for the client-appellant; it relieves counsel from any duty to argue issues they deem frivolous (unless, of course, the issue is specified by the court). *United States v. Arroyo*, 17 M.J. 224 (C.M.A.1984); *Grostefon*, 12 M.J. 431. As a consequence, we have also been led to misguided generosity in the application of our rules of form, permitting "*Grostefon* errors" to be filed in any form at all. That misplaces on us and on appellee the unfair burden of segregating the complaints of error on appeal from the general commentary that one finds in such papers. This "wheat and chaff" problem is more serious than may appear until one examines papers such as those filed in this case. Most importantly, we have forgotten that *Grostefon* requires that counsel bring *issues* to our attention, not facts, legal arguments, rambling commentaries, or diatribes. *Accord, United States v. Peel*, 29 M.J. 235, 242–45 (C.M.A. 1989); *United States v. Healy*, 26 M.J. 394, 397 (C.M.A.1988); *United States v. Sumpter*, 22 M.J. 33; *United States v. Williams*, 22 M.J. 584 (A.C.M.R.1986). Thus, there is really no reason that we have mentally coupled *Grostefon* with letters and memoranda from the appellant.

This case showed us that it is time to uncouple the two thoughts. The panel intended by its orders to hold appellate counsel to their *Grostefon* duty to consult the client-appellant as necessary and state (or restate, if necessary) appellant's issues for him, in a single brief to be timely filed, giving the client and this Court the advantage of counsel's ability to phrase assignments of error in the most sensible and advantageous terms.[13] It also intended to end the seemingly endless and piecemeal presentation of the appellant's assignments of errors.

### B. Assigning *Grostefon* Errors

Unfortunately, we had not anticipated all the questions that *Grostefon* issues cause, and three orders were necessary before all the flaws were addressed. Appellate defense counsel complied with our orders [14] by filing a new assignment of 31 errors, 30 of which were "*Grostefon* errors." He did so correctly in traditional assignments of error, but when counsel briefed each of the *Grostefon* errors, he added no more than a prayer for specific relief. In many cases, that left the assigned error so vague that one cannot determine exactly what events are contended by appellant to have formed the basis for the assignment. Such an assignment hinders this Court in attending to the assignments, and it unfairly impedes the opponent in preparing its responses. Appellate defense counsel argued that one cannot understand the *Grostefon* assignments unless one also examines the appellant's personal submissions. Counsel made

---

11. *See generally* Courts of Military Review Rules of Practice and Procedure, 22 M.J. CXXVII.

12. *See generally* annotation, "Sanctions, in Federal Circuit Courts of Appeals, for Failures to Comply with Rules Relating to Contents of Briefs and Appendices," 55 A.L.R. Fed. 521 (1981). Like the Court of Military Appeals, we concede that our rules may have imperfections which come to light in practice, but, also like that court, we have a Rules Advisory Committee in which the uniformed appellate agencies are represented, at which unintended consequences

of too stringent rules can be examined and corrected. *Cf. United States v. Ortiz*, 24 M.J. 323, 324 (C.M.A.1987).

13. We suspect that it will not be extraordinary for this process to bring to counsel's attention the germs of meritorious arguments that can be found in the lay appellant's narratives of his complaints.

14. 29 April 1991.

a good point but overlooked his own responsibility in that regard.

Such an assignment is no more tolerable to us than the piecemeal, voluminous, unorganized, and undisciplined submissions that the panel faced. We are ever mindful that appellate counsel should never be compelled to argue a position that is frivolous or without merit,[15] but we believe that there is an unexplored middle ground.

We know of no reason that, in assigning *Grostefon* errors, appellate counsel cannot state an adequate summary of the facts on which the appellant's complaint lies, in appellant's view. Counsel may rely on and cite to the record and to any of appellant's own submissions to the extent that the record has been thus supplemented on appeal,[16] and counsel may compose such statements in the third person, to assure that attribution is unmistakably to the appellant and not to counsel, wherever that is appropriate.

Counsel need only invoke *Grostefon* to make it clear that they have no choice in the matter. 12 M.J. at 435 (appellate counsel "may still ethically list the issue"); Air Force Rules of Professional Responsibility, rule 3.1(b) and discussion (1989). Appellate counsel fear that they also face criticism for disloyalty if they so clearly "signal" their assessment of the merit of such issues. With respect to the difficulty of their position, we note three factors that should reduce their anxiety. First, to do as the panel ordered is little different from doing what has been done in the 9 years of practice since *Grostefon.* Thus, if telegraphy was ever improper, it has at least become accepted practice. Indeed, it was an aspect of this special practice that was anticipated in *Grostefon.* 12 M.J. at 435 ("signal the Court of Military Review").

Second, we doubt that it was ever improper. We note that the subject of loyalty to a client is discussed in the ABA Model Rules of Professional Conduct mainly in connection with conflicts of interests, e.g., the comment accompanying rule 1.7. *Accord,* Air Force Rules of Professional Conduct, rule 1.7. *Conflicts* arise between the interests of the parties represented, not between the interests of the client and the duty to the forum. As an example of the primacy of the duty to the forum, note the rule requiring disclosure of authority adverse to the client's position. Air Force Rule of Professional Conduct, rule 3.3 (4 December 1989). *Accord,* ABA Model Rules of Professional Conduct, rule 3.3. Thus, the duty of fidelity to a client is not rigid but instead yields to the higher duty to the court. Third and finally, our special charter under Article 66, UCMJ, 10 U.S.C. § 866 (1988), and our general charter as an appellate court both would require us to uniformly disregard any discernible signal. We must always independently assess the issues for ourselves, in the interests of justice. Our track record is well established. We have often noted and addressed errors undetected by the parties, and we often address assigned errors in ways not briefed. Counsel have nothing to fear from stating issues as the panel ordered.

■ The orders to appellant stated three ways in which to handle "*Grostefon* submissions," which we review below.[17]

1. Recognizable Issues With Arguable Merit

First, it may be that an appellant's letter, affidavit, or consultation brings to his counsel's attention an issue in which appellate defense counsel finds arguable merit. In such an instance, the error should be asserted and briefed by coun-

---

**15.** *See* Air Force Rules of Professional Responsibility, rule 3.1 (4 December 1989); *accord* ABA Model Rules of Professional Responsibility, rule 3.1; Courts of Military Review Rules of Practice and Procedure, 22 M.J. CXXVII, CXXX, rule 6.

**16.** Despite the panel's efforts to be explicit, it apparently did not make this aspect clear in its orders in this case. The assignment of errors with which we now deal refers parenthetically to appellant's letters by their dates, as if they are

before this Court. However, the order *denied* the motions to file most of them. While those letters remain attached to the motions in the record, they have not been "filed," the appellate record has not been supplemented by them, and we have not considered them.

**17.** Two of the three are described in different terms in *Grostefon* itself. 12 M.J. at 435–437.

sel in the traditional manner, according to the rules of this Court. *Grostefon,* 12 M.J. at 437 ("submitting briefs and arguments on those issues which ... have arguable merit").

### 2. Recognizable Issues Deemed to Have No Arguable Merit

Second, an appellant's letter, affidavit, or consultation may urge for this Court's attention an issue in which appellate defense counsel finds no arguable merit. In this instance, if the appellant insists after consultation,[18] *Grostefon* still requires counsel to bring the issue to our attention. 12 M.J. at 435–37. They should do so by assigning the recognizable issue as error. *Id.* at 435 ("list the issue"), 436 ("invite the attention"). *See also Mitchell,* 20 M.J. at 351 n. 4. Often some orientation to the facts (as viewed by appellant) is necessary to sensible understanding of such an issue. In this instance counsel's assignment of error must be accompanied by a summary of the relevant facts, as stated in the record or as stated by the appellant, as necessary for fair consideration and disposition of the assigned error.[19]

### 3. No Recognizable Issue

Third, an appellant's letter, affidavit, or consultation may not state or imply any issue that his counsel can discern, with or without arguable merit. Such a communication is of no relevance or value in the review of a case and should not be filed with this Court *unless* it is supplied as evidence that a proposition urged by or on behalf of the appellant is true.[20]

In none of the foregoing three instances may an appellant's correspondence be filed routinely with this Court as an assignment or error, statement of facts, or argument of law.

### C. Supplementing the Record With Appellant's Submissions

Often counsel find that it is necessary to supplement the record by filing additional accounts of the facts pertaining to a case and its administration. Of course, the extent to which the record may be supplemented by documents filed on appeal is a separate issue which must be addressed as it arises.[21] When documents are collected to be filed in support of a proposition, counsel should not move to file those that duplicate matters already in the record but instead should simply bring the Court's attention to appropriate references in the record. Documents filed as evidence, regardless of their form, should be concise and limited to the propositions to which they are relevant. A document filed as evidence should not also argue the law, but

---

18. *See* Air Force Rules of Professional Conduct, rules 1.2(a) & (e), 1.4(b), 2.1 (4 December 1989); *accord* ABA Model Rules of Professional Conduct, rules 1.2(a) & (e), 1.4(b), 2.1.

19. In our orders we used the word "brief" in connection with the summary of facts just described, but our choice of words was imperfect because "brief" implies the kind of argument that would violate the lawyer's duty not to advance a frivolous issue. Indeed, *Grostefon* referred to "list[ing] the issue without further briefing." 12 M.J. at 435. We are ever mindful that appellate counsel should never be compelled to *argue* a position that is frivolous or without merit, *Grostefon,* 12 M.J. at 435–36; *see also, United States v. Healy,* 26 M.J. 394, 397 (C.M.A.1988); *Arroyo,* 17 M.J. at 226; *cf.* Air Force Rules of Professional Responsibility, rule 3.1(a), (b), and discussion (1989); *accord,* ABA Model Rules of Professional Responsibility, rule 3.1 and commentary (1983), but we believe that the middle ground described above satisfies the competing interests best.

20. *Cf. United States v. Williams,* 22 M.J. 584 (A.C.M.R.1986).

21. The government's motion for reconsideration by the panel invited the panel to enlarge upon when a record may be supplemented. However, this case presented us no such opportunity. Most of the *"Grostefon* submissions" were excluded by the panel's orders, and, despite explicit treatment of this aspect the order of 3 June 1991, no motions to supplement the record were received. The much earlier submissions, filed on motions granted by the original panel, were treated as *"Grostefon* submissions" have been treated before. The government identifies four issues as to which it asserts that we considered facts found in the *"Grostefon* submissions," but those issues were all resolved by the panel upon the record without supplementation, as they are here.

we recognize the difficulties that laymen may encounter in discriminating between fact and argument and with relevance. Such documents should be sworn. An appellant is likely to benefit from the ability of his counsel to articulate the facts for him in clear and concise language, and so it will most often be the case that counsel should draft the appellant's affidavit for him, using the appellant's submissions and their consultations as the basis.

With most of the foregoing guidance gradually developed, the panel ordered appellate defense counsel to restate the issues with an accompanying statement of the facts so that they would be understandable. Having now revisited *Grostefon*, its progeny, and the panel's administration of this appeal, we are confident that we have done no harm to appellant's rights under *Grostefon* to have heard on the appeal the issues he believes to be important. We do not believe that we have erred.

### III. Forgery

We turn now to appellate defense counsel's second assignment of error, that the record does not show appellant's pleas of guilty to the 11 specifications of forgery to have been provident. Appellant's first theory is that the forgeries related to getting advances of pay (the first 10 specifications) could only have resulted in earlier payment of money that would eventually be owed to appellant as currently due pay. Appellant also argues that the forgery related to getting a loan (specification 11) was not of a document that would itself operate to the detriment of another, as a forgery must be.

### A. Forgery and Advances of Pay

■ Appellant's "advance pay" idea is superficially appealing. His theory is that he got nothing more than what he would eventually draw in pay and did no more than to obligate himself to his own pay account. Though he was charged with both making and uttering the forgeries, offenses proscribed separately by Article 123(1) and (2), UCMJ, 10 U.S.C. § 923(1) and (2) (1988), both depend in part on the same characteristic of the writing: It "must be one which would, if genuine, apparently impose a legal duty on *another*,"

Manual For Courts–Martial, United States, 1984, Part IV, paragraph 48.c.(4) (emphasis added). Appellant's point is that obligating oneself imposes the duty only on oneself.

We have considered exactly this argument before, and we rejected it. *United States v. Lambert,* 17 M.J. 773, 776 (A.F.C.M.R.1983). "A servicemember cannot obtain advance pay just for the asking—it must be approved." *Id.* Appellant forged the indicia of approval, imposing on the pay clerk the duty to deliver the money asked, at the time asked, before it had been earned and come due. The fact that appellant's act created a debt is of no consequence; the same could be said of any illegal taking, for they all create a civil liability to the owner. And the idea that the debt was against appellant's own pay account inaccurately describes the pay system. A servicemember's pay is payable only after it is earned; there is no individual pay account in which one's anticipated pay for an enlistment or career lies as property of the servicemember, to be paid in installments. These forgeries were apparently adequate to appear to bestow upon appellant the right to receive advance pay, as he acknowledged during the inquiry into the providency of his pleas of guilty. It is enough that the forgery was "a step in a series [which] appear to perfect a legal right or to impose a liability." *United States v. Driggers,* 21 U.S.C.M.A. 373, 45 C.M.R. 147, 149 (1972).

### B. Forgery of Loan Recommendations

■ Appellant's next theory concerns only the last of the 11 specifications, which alleged that appellant forged a recommendation by his commander that the Air Force Aid Society lend money to appellant. Citing *United States v. Hopwood,* 30 M.J. 146 (C.M.A.1990), and *United States v. Thomas,* 25 M.J. 396 (C.M.A.1988), appellant argues that the commander's recommendation itself was a mere preliminary that did not itself bestow a right. The commander's recommendation in *Hopwood* was a reassurance to a commercial lender to whom Hopwood applied for a loan, as was the commander's letter in *Thomas. Thomas* differs only in that the lender was a

credit union. Both were found insufficient to constitute forgery.

However, Thomas and Hopwood pleaded not guilty, and the litigation in their cases presumably produced an adequate record on which to explore the relationship (or absence thereof) of the commanders' letters to the lending process. Appellant's case is more like *United States v. Ivey*, 32 M.J. 590 (A.C.M.R.1991), in which our sister court was confronted with a record abbreviated by the plea of guilty, like ours. Thus, we are unable to determine whether, as the government argues now, the Air Force Aid Society is different from a commercial lender in that the commander's decision governs. Instead, we can, as in *Ivey*, only infer from appellant's replies during the inquiry into the providency of his pleas that he intended to relieve the prosecution from proving such a relationship.

Thus, the real answer to both these assertion is that the time to litigate them has passed. *See United States v. Ballesteros*, 29 M.J. 14 (C.M.A.1989). We have examined the pleas and the inquiry in this case with special care, and we find no reason to set the pleas or the resulting findings aside.

### IV. Appellant's Claims

Also stated in the assignment of errors are 29 issues personally raised by appellant. They state most of the issues raised by appellant's submissions dated earlier than 22 October 1990, which we permitted to be filed and did consider. We address the 29 assigned errors and the earlier submissions now in topical order. In due course this leads us to the issues explored by the *DuBay* hearing.

### A. Pretrial Procedure

1. Illegal Pretrial Confinement (Appellant's assignment XXIII).[22]

■ Appellant contends that several procedural steps were omitted when he was confined before trial, and he asks a credit for the procedural defects. Pretrial confinement is governed by R.C.M. 304 and 305, and R.C.M. 305(k) governs remedies

for illegal pretrial confinement. It provides credits for violations in four areas, R.C.M. 305(f) (Military counsel), (h) (Notification and action by commander), (i) (Procedures for review ...), and (j) (Review by military judge). Much of appellant's complaint results from misinformation which even if true would not have legal significance. For instance, there is no requirement that a prisoner be "Mirandized," and there is no credit available for failure to give the similar advice required by R.C.M. 305(e). Manual For Courts–Martial, United States, 1984, Appendix 21, at pp. A21–14.-2, –15 (analysis accompanying R.C.M. 305(e)). His complaints put into controversy only one of the pivotal rights, the right to have counsel assigned before the review, R.C.M. 305(f). The record shows that military defense counsel had been assigned and did represent appellant at the hearing. This assignment of error is without merit.

2. Illegal Pretrial Punishment (XXIII and XXIV).

Appellant also contends that he was punished before trial by abusive treatment. *See* Article 13, UCMJ, 10 U.S.C. § 913 (1988). He complains that he was pushed around, not allowed to use a toilet, and put into a strait jacket. He also complains that drugs (prescribed to relieve the pain caused by his burns) were withheld from him while he was in pretrial confinement. Some of his complaints are true. He was put into a strait jacket and restrained when necessary, because of his violent and bizarre behavior, to protect him and others. However, the evidence of record and some of appellant's earlier submissions are inconsistent with the idea that he was deprived of use of a toilet, and we find that untrue. The evidence also shows a systematic if imperfect method of securing and issuing medication for prisoners including appellant, and, having examined the detailed inquiry into this issue by the *DuBay* hearing, we find that no medication prescribed by a physician was withheld. No evidence of unacceptable "pushing around" or verbal

---

**22.** We have addressed appellant's assignments of errors in the order most sensible to us, and so we have cross-referenced his assignments for the benefit of any other reviewers.

abuse is to be found in the record. We find no evidence of any pretrial punishment. Accordingly, this complaint is without merit.

3. Denial of Article 32 Investigation (XI) and Discovery (XXVII).

 Appellant complains that he was denied his right to have the charges investigated as required by Article 32, UCMJ, 10 U.S.C. § 832 (1988). However, appellant *waived* that right as part of his pretrial agreement to plead guilty. Furthermore, any complaint about the adequacy of the investigation of the charges was waived by appellant's failure to assert it timely. R.C.M. 405(k), 905(b)(1), (e), 906(b)(3). The same is true of complaints about the adequacy of discovery. R.C.M. 905(b)(4), 905(e). This assignment of error is without merit.

4. Denial of Speedy Trial (XIV).

 Appellate complains that he was denied a speedy trial. Examining his case we find that he was confined on 29 November 1989, the first charges were preferred against him on 1 December 1989, and that his trial was begun and ended on 2 March 1990, 93 days after he was confined. R.C.M. 707(a)(2) then required[23] that an accused be brought to trial within 120 days after having been restrained, and that rule is satisfied in appellant's case. R.C.M. 707(d) required that an accused who is confined must be brought to trial within 90 days, but it permitted exclusion of periods attributable to mental examinations, R.C.M. 707(c)(1)(A). The examinations in this case were requested by the defense and, when that request was made, there was good cause for the inquiry. Accordingly, the period attributable to those examinations may be excluded, and defense counsel explicitly agreed that 44 days between 1 December 1989 and 14 February 1990 were so attributable. That brings the total to 49 days, much less than the 90 days allowed. There was no violation of appellant's right to a speedy trial. Even if there

had been, R.C.M. 707(e) requires such complaints to be raised timely or waived, and this one was not. R.C.M. 905(e), 907(b)(2)(A). This assignment of error is without merit.

B. Mental Condition

1. Mental Condition During Mental Examination and Trial (IV).

This is the issue that caused the original panel to order the factfinding hearing in this case, and that hearing now disposes of it. To his prior claim that he was drugged at both events appellant now adds that he was impaired at trial by sleep deprivation.

As we noted above, the military judge at the factfinding hearing addressed the medications issues in his findings of fact, which we adopt. While appellant may have ingested medications prescribed for him, those he had during the mental examination would not have affected the ability of the psychiatrists to make reliable observations, and those that he had before trial would not have affected his capacity to participate, including his ability to give reliable responses during the inquiry into the providency of his pleas.

Furthermore, we have examined the record carefully, and we find no hint that appellant was impaired in any way, confused, incoherent, or distracted. Indeed, the exchanges during the providency inquiry are those of fully alert and competent persons.

Relying on the findings of the military judge at the factfinding hearing and on our own factfinding power, we find no facts which would support appellant's claims, and instead we find ample evidence that on both occasions appellant was free of any drug-induced or fatigue-related impairment. This assignment of error, which has so troubled this case, is without merit.

2. Denial of Article 31 Rights at *DuBay* Hearing (XV).

 Appellant asserts that testimony was obtained from him at the factfinding

---

**23.** R.C.M. 707 was substantially changed recently. Exec. Order No. 12,767, 3 C.F.R. __ (1991). *See generally* Placke, "R.C.M. 707 and the New Speedy Trial Rules," *The Reporter,* December 1991, at 1; "A New Speedy Trial Rule....," *id.* at 10.

hearing without any warning of his rights under Article 31, UCMJ, 10 U.S.C. § 831 (1988). He concludes that a new hearing should be required, but we disagree. The appellant did testify at the hearing, but he was called voluntarily by the defense to testify in his own behalf. His testimony was not an interrogation at which the Article 31 warning was required. This assignment of error is without merit.

3. Lack of Mental Responsibility & Cocaine Psychosis (V).

██ Appellant contends belatedly that he lacked responsibility for his offenses because he suffered psychosis induced by his use of cocaine. Once again, the time to try a defense has passed. Under R.C.M. 916(b), the burden of bringing forward evidence of the lack of mental responsibility is upon the accused and there was no such evidence presented at trial. However, with R.C.M. 916(k) (Lack of mental responsibility) in mind, we examined the record to assure that no such defense was overlooked by counsel at trial. The trial defense counsel originated the inquiry into appellant's mental condition, and with good cause. Such a measure has no drawbacks, other than to delay trial modestly. The full report of the mental examination is now available as an exhibit in the factfinding hearing and through the testimony at that hearing. The evidence now shows overwhelmingly (and we find) that appellant suffered no mental disease having the required incapacitating effect and, indeed, was simply malingering.[24] This assignment of error is without merit.

4. Lack of Specific Intent for Larceny (XVII) and for False Statements (XVIII).

In both these assertions, appellant complains that he was, at the time of the crimes, under the influence of drugs and therefore unable to form the necessary specific intents. In short, he now raises the intoxication defense. *See* R.C.M. 916(*l*)(2). Once again we note that the real answer to both these assertions is that the time to litigate them has passed. *See Ballesteros,*

29 M.J. 14. This is particularly evident when one notes that the intoxication "defense" is *not* a defense, but instead simply a description of the strategy of contesting the adequacy of proof of the element of intent. An accused may elect that strategy, or an accused may plead guilty, but an accused may not do both. Thus, these two claims were waived by appellant's pleas of guilty. We have examined the pleas and the inquiry in this case with special care, and we find no reason to set the pleas or the resulting findings aside. Appellant's responses during the inquiry, which we have already found reliable, showed the military judge that appellant pawned the stolen goods with no intent to redeem them and that he began his forgeries with the intent to get the money. Those replies satisfied the need to inquire, the pleas were shown provident, and these two assignments of error are without merit.

Raised in appellant's pre-*DuBay* letters is the idea that he "borrowed" the typewriters he is now convicted of having stolen. He did so by "signing them out" on "hand receipts." However, the same letter immediately reports that he pawned them. He also claims that he could not redeem them from the pledge because he was hospitalized. He also claims that he believed when he pawned the microwave oven and bicycle that he was acting in accord with instructions by the true owner. We regard appellant's present version as (at best) simply suggesting some misunderstanding of the idea that the intent to permanently deprive need not co-exist with the taking but may arise later. Appellant's responses during the inquiry into the providency of his pleas were unambiguous. He clearly informed the trial court that he never intended to redeem any of the pawned property, and his idea that he was acting for the true owner is a late arising concoction. We find no defect in the inquiry or the pleas. This issue is without merit.

C. Command Influence

1. Command Influence Over Mental Examination (XVI).

██ Appellant asserts that the mental examination board convened under R.C.M.

24. *See* note 2, *supra.*

706 was subjected to command influence through the efforts of the military justice administrators in the office of the staff judge advocate. (Appellant does not inform us which of the offices he intends to refer to, but our disposition of the issue is unaffected by the ambiguity.) His complaint is that the pressure of that office on the board caused the board to produce an unreliable report. He cites as an example that two of the doctors agreed to the report without having talked to him. In disposing of this issue, we assume without deciding that such a board is included among the persons and bodies protected by Article 37, UCMJ, 10 U.S.C. § 837 (1988) and R.C.M. 104(a), but that is not at all clear.

First we note that it is our impression that not all the participants in such a board need to personally examine the patient-accused. Instead, it is not atypical that the members of such boards rely on the reports of others who have administered psychological tests and who have observed the patient-accused. That appears to have happened in the examination of appellant, and that constitutes no issue. At most it might provide some fertile ground for cross-examination in a case in which a party contested the board's conclusions.

Next we note that appellant was hospitalized for observation for a considerable period, even after one deducts the interval appellant spent in a medical facility for treatment of his burns. We have examined both the report of the examination and the testimony about it, and we find no hint that it was hurried and no flaw which suggests that it was unreliable.

Finally, we note that an appellant who claims command influence must at least produce sufficient evidence to put the matter into controversy; mere assertions are not enough. *E.g., United States v. Allen,* 33 M.J. 209, 212 (C.M.A.1991). Appellant has failed to do so. This assignment of error is without merit.

2. Military Judge Not Impartial (XXIX).

Appellant complains that the military judge was subjected to command influence and was therefore not impartial. Once again, appellant has not met his burden. *Allen,* 33 M.J. at 212. We find no evidence suggesting that the military judge was anything other than impartial.

### D. Trial Generally

#### 1. Denial of Counsel of Choice (XXV).

■ Appellant purports to have made a request for individual military counsel, but he fails even to aver the person's name. Such a right is extended to a servicemember, R.C.M. 506(b), but it is necessary that the accused pursue the request as provided by that rule. An accused whose request is denied may complain at trial, R.C.M. 906(b)(2), but the complaint is waived if not made before pleas are entered, R.C.M. 905(b)(6), (e). There was no such complaint in this case, and the matter was waived if, indeed, any such request had ever been made. The colloquy on the record belies appellant's present recollection. This assignment of error is without merit.

#### 2. Fraudulently Induced Pretrial Agreement & Sub Rosa Agreement (IX & X).

Appellant's complaint is mainly against his defense counsel, who, he claims, misled him. Appellant claims that there was a sub rosa agreement that the forgeries would be reduced from 12 specifications to one, and that the larcenies, falsities, and malingering would all be withdrawn if he pleaded guilty. (On other occasions, we note, he complains that the withdrawal of the malingering deprived him of the chance to show his true state of mental impairment. Of course, withdrawal is discretionary, R.C.M. 604(a), and the only remedy for a "wrongful withdrawal" is to preclude a later trial on the same charges, not at issue here.)

Were his claims true, we would likely find both the plea improvident and the counsel ineffective (or worse), but the agreements are preserved in Air Force practice by the written proposal and by the military judge's inquiry to assure that there are no agreements other than those in the proposal. In this case, the proposal clearly records that appellant offered to plead guilty to everything but the ma-

lingering. Having reviewed the proposal, the record, and appellant's assertion, we can only find that appellant's claims are untrue. This assignment of error is without merit.

### 3. Denial of Expert Witnesses (VIII).

■■■ To compliment his complaint that he lacked the specific intents required to constitute the larceny and falsity offenses, appellant also complains that he was deprived of his right to have the government produce for him an expert to testify about cocaine-induced psychoses. *See* R.C.M. 703(d), (e). We note that such testimony could also have been relevant during sentencing, and so it does not dispose of this complaint simply to note that appellant's pleas abated the need for such testimony.

However, there is no suggestion anywhere in the record—except appellant's assertions—that appellant suffered such a condition. The mental examination found no psychosis of any kind, despite its earnest efforts. Perhaps for those reasons, there was no complaint before pleas that the defense had requested but been denied such a witness. Accordingly, any such complaint was waived. R.C.M. 905(b)(4), (e), 906(b)(7). This assignment of error is without merit.

### 4. Misconduct by Trial Counsel (XXVI).

■■■ Appellant complains that the trial counsel's argument on sentencing was "verbally brutal" and harshly demeaning. We agree that some of the trial counsel's remarks were very unflattering, but all were fair comment. *See generally* R.C.M. 1001(g). We find none that warrant a remedy. Furthermore, had there been any error in the argument, it was waived by appellant's failure to object timely. *Id.*

### 5. Military Judge Lacked Tenure (XXX).

We have recently addressed the idea that it is error for a court-martial to proceed with a military judge who lacks tenure for a fixed term, and we find it to be without merit. *United States v. Toro*, 34 M.J. 506 (A.F.C.M.R.1991).

### 6. General Denial of Fair Trial (XIII & XXII).

Finally, appellant claims a general denial of his right to a fair trial and due process, citing as one example the cold temperature of the courtroom. We find no infringements of those rights.

### E. Evidence

### 1. Voluntariness of Confession (XII).

■■■ Appellant contends that he was compelled to give a confession to his first sergeant. The remedy for such an event is to exclude the confession from evidence at trial. However, no such confession was offered at trial. Instead, appellant joined a stipulation of facts and pleaded guilty, and the stipulation and his sworn responses during the plea inquiry satisfied all needs for evidence. This issue is moot. There was no objection at trial and no motion in limine to suppress the confession or to claim that its derivatives, if it had any, should be excluded. The matter was waived. R.C.M. 905(b)(3), (e); Mil.R.Evid. 103(a)(1).

Appellant has at times complained that he wished to plead guilty conditionally, and such a plea might have preserved the opportunity to contest any involuntary confession. *See* R.C.M. 910(a)(2). However, had there been other evidence adequate to prove the case, even a conditional plea might not have been appropriate, *see United States v. Phillips*, 32 M.J. 955 (A.F.C.M.R.1991), and in that case there would still be no appellate remedy. We refuse to speculate. This assignment of error is without merit.

### 2. Breach of Privilege of Mental Examination Board Report (XXVIII).

■■■ Appellant claims that the trial counsel possessed at trial a copy of the full report of the mental examination. If he were correct, that would constitute a violation of R.C.M. 706(c)(3)(B) & (C) and 706(c)(5). We will simply assume that his complaint is true, though we note that there was no such complaint at trial and that there is no evidence of such a violation other than appellant's tardy assertions.

R.C.M. 706 is the rulemaker's effort to reconcile competing interests. Manual For Courts–Martial, United States, 1984, Appendix 21, at pp. A21–36 (analysis accompanying R.C.M. 706). On the one side is the need of a mental examination board to have full access to the accused's thoughts. On the other is the accused's interest in keeping those thoughts private and protecting them through his privilege not to give evidence against himself. *See generally United States v. Frederick*, 3 M.J. 230 (C.M.A.1977); *United States v. Babbidge*, 18 U.S.C.M.A. 327, 40 C.M.R. 39 (1969). The rule resolves the conflict by extending a privilege against disclosure of the report, thereby protecting the accused's admissions.

Thus, what is really at stake is a privilege. This privilege is specially protected by Mil.R.Evid. 302. It provides that the remedy is to exclude evidence at trial. There is no appearance that any evidence obtained in violation of the privilege was ever offered in appellant's trial, but, if it had been, there was no objection at trial, and so the matter is waived. R.C.M. 905(b)(3), (e); Mil.R.Evid. 103(a)(1).

3. Examination of Mail by Prison Officials (XXI).

 Appellant complains that his correspondence was opened and examined while he was in pretrial confinement, even that marked "privileged." Here, as above, we note that the only remedy for a breach of privilege is to exclude the evidence and its derivatives. When appellant pleaded guilty, he abated the need for evidence, and little was introduced. None seems likely to have arisen from exploitation of an abuse of privilege, but if it was, the objection was waived by the failure of the accused to assert it at trial. R.C.M. 905(b)(3), (e); Mil. R.Evid. 103(a)(1).

4. Chain of Custody of Urine Specimens.

 In his pre-*DuBay* letters, appellant notes that the reliability of the chain of custody of his urine specimens was not shown at trial, and he disputes it. However, his pleas of guilty to the associated charges that he used cocaine relieved the prosecution of the burden of proof in that regard. Any objection was waived by the failure of the accused to assert it at trial. R.C.M. 905(b)(3), (e); Mil.R.Evid. 103(a)(1).

F. Effectiveness of Defense Counsel

(Generally & Collusion) (III & VII).

Appellant complains that his defense counsel colluded with the prosecution to frustrate his wish to have an expert witness and to have a reliable mental examination. He adds that his defense counsel refused to move for dismissal of the charges for a defective preferral and for denial of a speedy trial and failed to move for a mistrial because of appellant's mental incapacity at trial. He also complains that his defense counsel failed to show that appellant's behavior was the result of the effects of use of cocaine and that the mental examination was unreliable. Appellant further complains that his counsel refused to file certain writs for extraordinary relief. He concludes by accusing his counsel of having given a poor, unforceful presentation at trial.

 Appellant's trial defense counsel has filed affidavits in response. Exercising our factfinding power, we find that the decision to forego expert testimony was made by appellant and his defense counsel as part of their choice of strategy and after consultation. We find no evidence suggesting any need to contest the reliability of the mental examination. We find no evidence suggesting any defect in the preferral.[25] We have discussed appellant's

---

**25.** We note that the choice to plead guilty in conformity with the pretrial agreement was, as a practical matter, inconsistent with contesting the preferral. Complaints about preferral must be made before pleas or be waived, R.C.M. 905(b)(1), (e). The remedy is to require that the government prefer the charges and forward them anew, perhaps to investigate them again, *but see* Article 32(c), UCMJ, 10 U.S.C. § 832(c) (1988), and to submit them anew for referral. Such a time-consuming process for correction of an error having no relationship to the reliability of a conviction would not likely have endeared the pretrial agreement to the convening authority, and he might well have repudiated it. R.C.M. 705(d)(5)(B).

two theories for motions to dismiss, and we found there to have been no cause for such motions. We have found no cause to consider the mental examination unreliable. We found no cause for extraordinary writs of any kind. Thus, all of appellant's statements of factual grounds are, in our opinion, untrue.

■■■ We are left only with his assertion that his counsel should have shown as mitigation the powerful effects of the abuse of cocaine. The defense counsel has not addressed that complaint, but it need not detain us long. Though suspicion naturally lingers, there was never any evidence in this case that linked appellant's abuse of cocaine with his other crimes, all of which involved his criminal efforts to raise money. There was no evidence showing that appellant had used cocaine on other than two occasions, once during each of the two periods pleaded. Had the defense emphasized the debilitating effects of cocaine addiction, it would have crystallized the suspicion and provided evidence suggesting that appellant was more than a two-time user, that he was instead a wretched addict whose willingness to do wrong to accommodate his craving respected no limits, regardless whether moral, legal, or religious. That would have been a dangerous strategy, and the choice not to pursue it hardly suggests ineffectiveness.

The burden of proof of ineffectiveness and the burden of proving that the ineffectiveness prejudiced the appellant lies with appellant, who must overcome the presumption that counsel was effective. *See generally United States v. Barnard,* 32 M.J. 530 (A.F.C.M.R.1990), *pet. denied,* 33 M.J. 484 (C.M.A.1991). Appellant failed to meet either burden. This assignment of error is without merit.

### G. Sentence

1. Constitutionality of Sentence (XXXI).

■■■ Appellant submits that the "fine" was constitutionally excessive in view of the amount of the dollar value of the property stolen and considering that all the property was restored to its owners. U.S. Const., amend. VIII. (No fine was adjudged, but we assume that appellant refers to the forfeitures of pay that were adjudged. The constitutional prohibition may reach further than fines as strictly defined. *United States ex rel. Milwaukee Social Democratic Publishing Co. v. Burleson,* 255 U.S. 407, 435, 41 S.Ct. 352, 362, 65 L.Ed. 704 (1921) (Brandeis, J., dissenting) (denial of second-class mailing privileges added to mailing cost incrementally, caused fine to be indefinite).) He contends that the adjudged forfeiture of all pay and allowances deprives him of over $24,000 per year. Accepting his factual assertions as true, we hardly find his argument persuasive.

First, military sentences are determined on the offenses on which the accused was convicted, as a conglomerate. Thus, the first logical error is that the forfeitures are related only to the property offenses. They are not so limited. They are instead one component of a sentence which, as a whole, was adjudged as punishment for the offenses, taken as a whole. R.C.M. 1005(e)(1) and Discussion. Second, property value is but one of many factors that may bear on what constitutes an appropriate sentence. The forfeitures need not approximate the property value, as if the criminal sentence were somehow related to a civil action for restitution or damages. Third, "[a] forfeiture deprives the accused of the amount of pay (and allowances) specified as it accrues." R.C.M. 1003(b)(2), Discussion. Thus, it is hardly likely that any forfeiture of pay for the period for which an accused is confined could ever be constitutionally defective. It is, instead, simply a deprivation of unearned wages. *Cf. Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) (14th amend., equal protection, indigence, inability to pay fine). Finally, the forfeitures do not offend any of the criteria by which the Supreme Court has measured compliance with the Constitution. Annotation, *Federal Constitutional Guaranty Against Cruel and Unusual Punishment—Supreme Court Cases,* 33 L.Ed.2d 932, § 7 at 942–47 (1973). Taking all these factors into consideration, we conclude that the approved forfeitures do not offend the Constitution.

■ Appellant also complains that the confinement adjudged was for an "inhumanly excessive period." We take his complaint as another assignment of constitutional error, suggesting that confinement for 5 years for such convictions is cruel and unusual. U.S. Const., amend. VIII. However, his argument is inconsistent with the view he implied when he negotiated a 10–year limitation in his pretrial agreement, double the sentence that he now views as unconstitutional. We further note that the 5 years adjudged is but a fraction of the 70 years available as the maximum confinement that could have been adjudged, after the parties agreed on multiplicity. Finally, the sentence to confinement and the sentence as a whole lack the kind of cruel excesses that have been found to violate the Constitution. *See Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) (15–year sentence in Philippine false document case included painful labor, carrying chains, and lifelong civil disability); *see generally* annotation, *Length of Sentence as Violation of Constitutional Provisions Prohibiting Cruel and Unusual Punishment,* 33 A.L.R.3d 335 (1970); annotation, *Prison Conditions as Amounting to Cruel and Unusual Punishment,* 51 A.L.R.3d 111 (1973). This assignment of error is without merit.

2. Appropriateness of the Sentence (VI).

■ Appellant also complains that the sentence is unduly severe. We have examined the record, the convictions, and the sentence, giving due consideration to the characteristics of this offender and to the crimes of which he was convicted. *United States v. Healy,* 26 M.J. 394 (C.M.A.1988); *United States v. Wingart,* 27 M.J. 128 (C.M.A.1988); *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982); *United States v. Ciulla,* 29 M.J. 868 (A.F.C.M.R. 1989), *aff'd,* 32 M.J. 186 (C.M.A.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 172, 116 L.Ed.2d 135 (1991). We are satisfied that

the sentence is not inappropriate, as adjudged and as approved.

## H. Post–Trial Procedure

1. Disqualification of Convening Authority (XIX).

Appellant reminds us of our unpublished decisions in *United States v. Gregg,* ACM 28848, 1991 WL 85323 (18 April 1991) and other cases in which we remanded records for new actions by different convening authorities because the original convening authority was himself suspected of sexual misconduct analogous to that of which the appellants in those cases had been convicted. *See, e.g., United States v. Kroop,* 34 M.J. 628 (A.F.C.M.R.1992). The action in the present case was taken by the same convening authority, and appellant asks the same relief. However, we have not extended that relief to cases like appellant's, which do not involve predatory sexual misconduct. This assignment of error is without merit.

2. Denial of Clemency Because of Racial Discrimination (XX).

■ Appellant complains that the convening authority withheld clemency in cases involving black and Hispanic offenders but granted it to white offenders. Appellant claims this to be "common knowledge." Appellant has supplied no evidence that his "common knowledge" is true other than his own assertions. We note that it is difficult (though not impossible) to find any references to appellant's race in his record, as is typical. We also note that appellant's sentence is half the limit that he negotiated before trial. *Cf. United States v. Tucker,* 29 M.J. 915, 916 (A.C.M.R.1989). The sentence adjudged is within the limits of what we would have expected in such a case.

We have found no authority dealing with claims of racial discrimination during the convening authority's action.[26] However,

---

**26.** In the opinion for the panel I wrote, "We have not been helped by appellee's counsel, who entered their general opposition to this assignment and to all or parts of seven others. We are saddened when the voice of the community,

the government, and our solicitor general remains mute, for that hinders us in the discharge of our duty and deprives us of the value of another's research and point of view. *See generally,* L. Caplan, *The Tenth Justice* 1–32 (1988)."

the situation is very similar to claims of selective prosecution based on race, on which there have been some decisions. In that setting, the accused must show, by prima facie evidence, that there was discriminatory decisionmaking in fact and that it was based on impermissible considerations, such as race. *United States v. Hagen*, 25 M.J. 78, 83 (C.M.A.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988). We hold that mere assertions of racial bias are not enough to put the present issue into controversy. *Cf. Allen*, 33 M.J. at 212 (raising command influence). Accordingly, this issue is without merit.

### V. Conclusion

We have now reviewed appellant's case, including his pre-*DuBay* submissions and the recent assignment of errors. We have found no errors that warrant relief. The sentence is not inappropriate. The findings and sentence are correct in law and fact, and they are

AFFIRMED.

Senior Judge LEONARD and Judge STUCKY concur.

Chief Judge DIXON, Senior Judges HODGSON, O'HAIR, and MURDOCK, and Judge MILLS did not participate.

McLAUTHLIN, Judge (concurring in the result):

I agree with the way the panel treated appellant's submissions under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), in this case and write separately only to address any suggestion in the lead opin-

Appellate government counsel took exception to that, arguing that general oppositions are permitted by our rules, that government counsel must economize their efforts, and that we found every point on which its opposition was general to be without merit.

Of course, the latter response is misaimed. By that logic, the government might dispense with briefs on about two-thirds of all the errors assigned, for (very roughly estimating) only about a third or fewer result in any relief. What the government's argument overlooks is the need of this Court for its helpful views on *all* assignments of error. While a general opposition is permitted by our rules, it does no good for us.

ion that the same treatment will be required in all future cases. This panel was forced to take extreme measures to deal with a most unusual situation. Only after becoming inundated with appellant's "*Grostefon* matters" did the panel finally take its drastic step. I do not think the panel acted improperly or ran afoul of *Grostefon* under the circumstances, but I do not feel this panel's means of dealing with an exception should become the routine.

RIVES, Judge, joined by Senior Judge PRATT (dissenting in part and concurring in the result):

We are in substantial agreement with the lead opinion in this case. Certainly, the volume and quality of this appellant's submissions invite criticism. Appellant did abuse his prerogative by flooding the Court with innumerable, repetitive filings. We do not question a panel's ability to control such filings. Nor, in a proper case, do we find it improper to task appellate counsel to assist the Court by identifying issues raised in a client's submissions under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

We dissent, however, from that portion of the lead opinion that would (1) preclude, in this case and as a matter of course, consideration of the actual submissions of an appellant under *Grostefon*, and (2) seek to establish sweeping new requirements for the handling of *Grostefon* submissions.

While perhaps not mandated by the *Grostefon* opinion, the filing of an appel-

I also wrote earlier, "One is tempted to regard '*Grostefon* issues' with some disdain, but an appellant is entitled to a hearing on his complaints. * * * [T]hat is the point of *Grostefon*, and such matters should be taken seriously. A general opposition does not take them seriously enough." A general opposition suggests the too casual treatment of "*Grostefon* issues" that the panel sought to cure with its orders in this case. No judge on this Court has voted to diminish *Grostefon*. All are united in their willingness to follow its mandate. We hope that we will have the help of appellate government counsel when we do.

lant's actual submissions has evolved as an accepted practice before this Court. Our consideration of such matters is consistent with our responsibility to read the entire record and independently determine the propriety of the approved findings and sentence. Article 66(c), UCMJ. We agree that certain submissions can properly be rejected in the discretion of the Court because they are filed out of time, immaterial to any potential issue, redundant of materials already in the record of trial or allied papers, or for other appropriate reasons. We also agree that, on a case-by-case basis, this Court has the authority to order counsel to "cull" issues out of lengthy or otherwise disjointed submissions by their client. However, we *cannot* accept the scheme fashioned in the lead opinion whereby this Court would routinely reject the actual submissions of an appellant. We find it especially ironic that this wholesale rejection is accomplished in the name of *Grostefon.*

The Court in *Grostefon* was "concerned with the *perception* of an accused that his appointed appellate counsel has not given him the full representation demanded by the Uniform Code of Military Justice." 12 M.J. at 436 (emphasis added). Accordingly, appellants have been able to raise matters under *Grostefon* regardless whether their counsel believed they had legal merit. *See United States v. Peel,* 29 M.J. 235, 243 (C.M.A.1989); *United States v. Healy,* 26 M.J. 394, 397 (C.M.A.1988); *see also Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (wherein the appellant's handwritten petition to the Supreme Court led to a fundamental change in the meaning of the Sixth Amendment's right to counsel). As our appellate practice has evolved in this area, we have permitted appellants to use the *Grostefon* "mantra" to submit all manner of documents for our review. Appellate counsel, however, have used their judgment in forwarding such items. Sometimes, they provide detailed briefs on issues; at other times, they serve merely as conduits to present matters from their clients. When we deem it necessary or appropriate, we specify issues that are raised by appellants but not briefed by counsel. We firmly believe that this practice significantly enhances both the reality and, perhaps more importantly, the *perception* by appellants that their issues and concerns receive a fair hearing on appeal. In this same vein, we fear that the wholesale exclusion of appellants' submissions serves to undermine that important perception.

The adage holds that "bad cases make bad law." The *Grostefon* submissions in this case are clearly atypical; to craft rules in response to them becomes bad precedent and invites more "bad cases." The remedy chosen in the lead opinion resolves this case at the cost of needlessly rejecting appellant's submissions and unnecessarily intruding into the responsibilities (and judgment) of appellate defense counsel. Fortunately, it does not represent the views of a majority of this Court and thus lacks precedential value.

In summary, we believe that our past methods of dealing with *Grostefon* submissions have been practical and effective, and have enhanced appellants' perception of fairness in the military justice system. That approach should not be changed.